**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| N.P.C., by her Guardian Ad Litem, DEMELIN CASTILLO MERIDA, and DEMELIN CASTILLO MERIDA and HECTOR PEREZ, Individually,<br><br>                    Plaintiffs,<br><br>        v.<br><br>UNITED STATES OF AMERICA,<br><br>                    Defendant. | Civil Action No. 2:10-cv-0992 (KSH)(CLW)<br><br>**REPORT AND RECOMMENDATION** |

**THIS MATTER** came before the Court on February 18, 2016 for a friendly hearing with respect to the parties' proposed settlement. For the reasons set forth on the record and for good cause shown, the Court respectfully recommends that the District Judge approve and enter the attached Order of Distribution, Stipulation of Compromise, and Stipulation of Dismissal.

                                        *s/Cathy L. Waldor*          
                                        **CATHY L. WALDOR**
                                        **United States Magistrate Judge**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| N.P.C., by her Guardian Ad Litem DEMELIN CASTILLO MERIDA, and, DEMELIN CASTILLO MERIDA and HECTOR PEREZ, Individually,<br><br>*Plaintiffs,*<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>*Defendant.* | HON. CATHY L. WALDOR<br><br>*Civil Action No.* 10-CV-992 (KSH) (CLW)<br><br>ORDER OF DISTRIBUTION |

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the settlement amount of $350,000.00 (the "Settlement Amount") set forth in the Stipulation of Compromise, Settlement, and Release of Federal Tort Claims Act Claims Pursuant to 28 U.S.C. § 2677 (the "Stipulation"), shall be distributed according to the terms and conditions of the Stipulation. With respect to the funds that will be issued by check to Plaintiffs' attorney pursuant to paragraph 11 of the Stipulation, the following disbursements are approved by the Court and ordered to be paid as provided herein from the attorney's client trust account:

1. Attorney's fees: $77,886.37;

2. Disbursements, Costs and Expenses: $38,454.51;

3. Payment to the Treasurer, State of New Jersey for reimbursement of minor's Medicaid lien: $36,525.35;

4. Mandelbaum Salsburg: $2,400.00 for the preparation of a Special Needs Trust;

5. Demelin Castillo Merida: $12,500.00 for her personal injury; and

6. Hector Perez: $12,500.00 for his personal injury.

7. The aggregated amount of set forth in No. 3 above is based upon Plaintiffs' counsel's

representation to the Court that he has conducted a diligent search of his files and his clients'

files, identified the names of individuals and entities who may have a lien or claim for payment

or reimbursement for providing goods or services to the minor or for making payments on behalf

of the minor, has determined the amount claimed by each, and calculated the aggregate amount

claimed. The aggregate amount of said liens and claims shall be used to pay or resolve the liens

and claims identified above.

Once said liens or claims have been paid or finally resolved, Plaintiffs' counsel shall pay

the balance (the "Balance") of the funds to the Special Needs Trust of N.P.C. of 2015.

8. The remaining proceeds in the amount of $169,733.77 received by N.P.C., including all

payments derived from any annuity, and the right to receive any payments from any annuity

derived from this settlement, whether they represent principal or income, and any principal or

income payable from any other source that was derived from the settlement shall be paid (and are

hereby irrevocably assigned) to the Trustee of the Trust described in the subsequent paragraphs

of this Order, and thereafter held in trust for the remainder of N.P.C.'s life to be used only to

meet those of her needs that cannot be met through private insurance or under any government or

private program of financial entitlements, services or other benefits. During N.P.C.'s lifetime, the

trust assets shall not be used to reimburse any public or private agency, including an insurance

carrier, for the care, support, maintenance or education of N.P.C. or to pay any associated fees.

The proceeds shall not be paid to N.P.C. or applied for her benefit for any purpose, including

payment for food, clothing or shelter, if to do so would render her ineligible for any public or

private program of significant value, or, significantly reduce the benefits to which she is entitled.

9. S.O.S. Eldercare Consultants, L.L.C., shall serve as trustee under a Trust Agreement.

Said Trust Agreement shall be known as N.P.C. SPECIAL NEEDS TRUST. No bond shall be

posted.

10. Plaintiffs having submitted to the Court for review a Trust Agreement which conforms to the terms of this Order, such agreement is approved. Said Trust having been established by Plaintiff, Demelin Castillo Merida at the direction of this Court. For the purposes of 42 U.S.C.A. § 1396p(d)(4XA) and 42 U.S.C.A. § 1382b(e)(5), the Trust shall be deemed to have been established by the Court. (Exhibit A - Trust Agreement).

11. The personal representatives of N.P.C. are directed to continue to seek all benefits and services that N.P.C. is now or may be entitled to receive from any government or private program, including private insurance. None of these benefits shall be commingled with any funds that the Court has directed to be placed into Trust.

Dated this __ day of February 2016

THE HONORABLE CATHY L. WALDOR
UNITED STATES MAGISTRATE JUDGE

## NAHOMI PEREZ CASTILLO SPECIAL NEEDS TRUST

**NOW,** on this _____ day of September, 2015, a Special Needs Trust is hereby established for the sole benefit of **NAHOMI PEREZ CASTILLO**, a disabled person, as defined in the Social Security Act at § l614(a)(3) and 42 U.S.C. §1382c(a)(3), currently age nine (9) years and whose date of birth is September 11, 2006 (hereinafter referred to as "Beneficiary"), by **DEMELIN CASTILLO MERIDA**, residing at 128 East 7th Street, Plainfield, New Jersey 07060 (hereinafter referred to as "Grantor"), with **S.O.S. ELDERCARE CONSULTANTS, L.L.C.,** whose current office address is 17 Roome Road, Towaco, New Jersey 07082 (hereinafter referred to as "Trustee"). This Trust is written pursuant to 42 U.S.C. § 1396(d)(4)(A), as amended, by the Omnibus Budget Reconciliation Act of 1993, Pub. L. No. 103-66, and subsequent regulations duly promulgated in compliance with the Federal and State enabling statutes.

It is the intent of this Trust that the Beneficiary receives all government entitlements to which the Beneficiary would otherwise be entitled but for the distributions hereunder. It is recognized that in view of the vast costs involved in caring for a disabled person, assets retained outright by the Beneficiary would be rapidly dissipated. It is intended that the Trust be for the sole benefit of the Beneficiary and that the Trust fund supplement rather than supplant, impair, or diminish government entitlements. It is not intended for the Trust to be administered or characterized as a "pooled Trust" under 42 U.S.C. § 1396p(d)(4)(C) and the Trust cannot be amended or modified to qualify as a "pooled Trust" or to achieve any other purpose except as expressly set forth above.

## SECTION 1. IDENTIFICATION

1.1.   NAME OF TRUST--The name of this Trust is the "**NAHOMI PEREZ CASTILLO SPECIAL NEEDS TRUST**".

1.2.1.   Initial Trust Funding--This Trust shall be funded with the assets described in Schedule "A" attached hereto. These assets were originally derived from the net proceeds of the settlement of the lawsuit captioned *NAHOMI PEREZ CASTILLO by her Guardian Ad Litem DEMELIN CASTILLO MERIDA, and DEMELIN CASTILLO MERIDA and HECTOR PEREZ, Individually, v. UNITED STATES OF AMERICA,* United States District Court for the District of New Jersey, Docket No. 2:10-cv-00992-KSH-PS before the Honorable Kathryn S. Hayden, U.S.D.J.

1.2.2.   Additions to Trust--Other property, real or personal, may be transferred to the Trustee by anyone, with the consent of the Trustee. All property held by the Trustee shall constitute the "Trust Estate."

Subsequent additions made to the Trust corpus shall be reported to the New Jersey Division of Medical Assistance and Health Services, Office of Legal and Regulatory Affairs, PO Box 712, Trenton, New Jersey 08625-0712, or its successor agency.

Subsequent additions to the Trust (other than interest on the corpus) shall cease when the Beneficiary reaches age 65. Subsequent payments to this Trust from an annuity arising from a structured settlement established prior to the beneficiary attaining age 65 shall be treated the same as payments made before the individual attained age 65 pursuant to Program Operations Manual Systems (POMS) SI 01120.2013 effective May 14, 2013.

1

## SECTION 2.  DISTRIBUTION OF INCOME AND PRINCIPAL

2.1.   PROVISIONS DURING BENEFICIARY'S LIFETIME--During the lifetime of the Beneficiary, the Trustee may distribute from the principal or income, or both, of this Trust, such amounts that the Trustee, in Trustee's sole and unfettered discretion, may from time to time deem reasonable or advisable.  Any income of the Trust not so distributed shall be added annually to principal.

This Trust is for the sole benefit of Beneficiary.  Thus, if expenditures are made from the Trust which also incidentally provide ongoing and continuing benefit to other persons, those other persons who also benefit shall contribute a pro rata share to the Trust for the subsequent expenses associated with the use of the acquisition.

2.2.   DISTRIBUTIONS AFTER BENEFICIARY'S DEATH

2.2.1.   Reimbursement for Medical Assistance--Any assets remaining in the Trust on the death of the Beneficiary shall first be used to reimburse the Department of Medical Assistance and Health Services of the State of New Jersey for medical assistance paid on behalf of the Beneficiary during the lifetime of the Beneficiary, as consistent with federal and state law.  If the Beneficiary has received Medicaid benefits in more than one State, each State that provided Medicaid benefits shall be repaid.  If there is an insufficient amount left to cover all benefits paid, then each State shall be paid its proportionate share of the amount left in Trust, based upon the amount of support provided to the beneficiary.  Assets remaining in the Trust after such reimbursement shall be distributed as set forth in 2.2.2 below.

2.2.2.   Distribution of Remaining Trust Estate--On the death of the Beneficiary, the Trustee shall distribute the remaining Trust to **Demelin Castillo Merida** and **Hector Perez**.  If Demelin Castillo Merida and Hector Perez are not living, the remaining Trust assets shall be distributed to the Beneficiary's Estate.

2.3.   AGE REQUIREMENT--With regard to those Beneficiaries specified in Section 2.2.2, if any one of these Beneficiaries is under the age of twenty-one (21) years or is, in the opinion of the Trustee, under any disability that renders such Beneficiary unable to administer distributions properly when the distribution is to be made, the Trustee shall continue to hold such Beneficiary's share as a custodian and manage such share pursuant to the Uniform Transfers to Minors Act until he or she reaches the age of twenty-one years or overcomes the disability, when the Trustee shall distribute such Beneficiary's share to him or her.  On the death of such Beneficiary before that time, the Trustee shall distribute the Trust, including any accrued and undistributed income, to the estate of such Beneficiary.

2.4.   DISTRIBUTION PROVISIONS--In making distributions from this Trust, the Trustee is authorized to consider, in the Trustee's sole discretion, the reasonableness or advisability of making distributions in satisfaction of the Beneficiary's special needs.  As used in this instrument, "special needs" refers to the requisites for maintaining the Beneficiary's good health, safety, and welfare when, in the discretion of the Trustee, such requisites are not being provided by any government agency, office, or department; any nonprofit organization; or any other public or private source.  Although the Trustee is authorized to consider these other sources and, where appropriate and to the extent possible, endeavor to maximize the collection of such benefits and to facilitate distribution of such benefits for the benefit of the Beneficiary, the Trustee may also, in the exercise of the Trustee's discretion, disregard these other sources when making distributions to or for the benefit of the Beneficiary.  Distributions may be made from the Trust Estate without securing prior court approval.

2

2.5.    INTENT REGARDING DISTRIBUTIONS--It is the intention of the Grantor to create a special and/or emergency fund for the benefit of the Beneficiary and not to displace or supplant public assistance or other sources of support that may otherwise be available to the Beneficiary. The Beneficiary may have "special needs" such as medical, dental, ophthalmic, or auditory care; psychological support services; supplemental nursing or physical therapy care; rehabilitation; medical procedures that are desirable in the discretion of the Trustee, even though the procedures may not be necessary or life-saving; differentials in cost between housing and shelter for a shared or private room in an institutional setting; and expenditures for travel and transportation, companionship, entertainment, cultural and educational experiences and similar care that other assistance programs may not otherwise provide. The Trustee may retain the services of a Care Manager and the services of such providers as may be selected by the Care Manager from a Primary Care Agency. This list is not meant to be exhaustive, but rather illustrative of the kind of special needs that this Trust is designed to meet. The Trustee is authorized to consider these and any other requisites of the Beneficiary when making distributions.

It is important that the Beneficiary maintain a level of human dignity and humane care. The Trustee should bear this in mind when making distributions from the Trust while simultaneously considering that the Trust is not to be invaded by creditors, subjected to any liens or encumbrances, or administered in such a way as to cause public benefits to be not initiated or to be terminated.

*Notwithstanding the above, the funding of this Trust is subject to the valid and enforceable debts and liabilities of the Beneficiary at the time the Trust is originally funded and the Trustee is authorized to utilize the funds in the Trust to pay, settle or satisfy said claims, after making reasonable efforts to negotiate and reduce same.*

To the extent reasonable or advisable, the Trustee may deplete the Trust corpus prior to the Beneficiary's death, thereby giving preference to the interests of the Beneficiary. The Trustee, however, is admonished to refrain from distributing property of the Trust to or on behalf of the Beneficiary that will then be re-titled in the name of the Beneficiary. The Trustee shall hold title to all property comprising the Trust even when that property is distributed to the Beneficiary for her use. The Trustee may liquidate property of the Trust at any time, and such property need not be held in the name of the Beneficiary.

No part of the Trust shall be used to supplant or replace benefits due from any insurance carrier under any insurance policy covering the Beneficiary.

Prior to the death of the Beneficiary, the Trustee shall give special consideration to paying any outstanding expenses of administration related to the Trust, including reasonable attorneys' fees, and should further consider purchasing a reasonable burial plan to pay expenses relating to the funeral of the Beneficiary.

The Trustee shall provide income in-kind from this Trust, including in-kind support and maintenance, if such distributions are necessary in the sole discretion of the Trustee.

2.6.    PUBLIC-ASSISTANCE PROGRAMS--The Trustee may, in the exercise of the Trustee's best judgment and fiduciary duty, seek support and maintenance for the Beneficiary from all available public resources. The Trustee shall take into consideration the applicable resource and income limitations of any public-assistance program for which the Beneficiary is eligible. The Trustee is hereby granted full and complete discretion to initiate the process of rendering the Beneficiary eligible for any such program of public benefit and is hereby granted full and complete discretion to initiate either administrative or judicial proceedings, or both, for the purpose of determining eligibility. All costs relating thereto,

including reasonable attorneys' fees, shall be a proper charge to the Trust. It is the intention that no part of the corpus of the Trust created herein shall be used to supplant or replace public-assistance benefits of any county, state, federal, or other government agency that has a legal responsibility to persons with disabilities that are the same or similar to those the Beneficiary may be experiencing. For purposes of determining the Beneficiary's public-assistance eligibility, no part of the principal or undistributed income of the Trust shall be considered available to the Beneficiary. The Beneficiary does not have the power to assign, encumber, direct, distribute, or authorize distributions from this Trust.

In the event the Trustee is required to release principal or income of the Trust to or on behalf of the Beneficiary to pay for benefits or services that such public assistance is otherwise authorized to provide were it not for the existence of this Trust, or in the event the Trustee is requested to petition the court or any other administrative agency for the release of Trust principal or income for this purpose, the Trustee is authorized to deny such request and is authorized, in the Trustee's discretion, to take whatever administrative or judicial steps may be necessary to continue the public-assistance program eligibility of the Beneficiary, including obtaining instructions from a court of competent jurisdiction ruling that the Trust corpus is not available for the Beneficiary for such eligibility purposes. Any expenses of the Trustee in this regard, including reasonable attorneys' fees, shall be a proper charge to the Trust. No Trustee shall be liable for any loss of Trust assets, except for any loss caused by the Trustee's bad faith, wanton conduct, or negligence.

## SECTION 3.  NOTICE

3.1.  NOTIFICATION TO STATE CONCERNING BENEFICIARY OF MEDICAL ASSISTANCE--The Trustee shall notify the New Jersey Division of Medical Assistance and Health Services, Office of Legal and Regulatory Affairs, PO Box 712, Trenton, New Jersey 08625-0712, or its successor agency, of the creation or funding of the Trust.

3.2.  NOTIFICATION TO STATE ON DEATH OF BENEFICIARY--The Trustee shall notify the New Jersey Division of Medical Assistance and Health Services, Office of Legal and Regulatory Affairs, PO Box 712, Trenton, New Jersey 08625-0712, or its successor agency, of the death of the Beneficiary, and the Trustees shall verify a detailed claims report of the total medical assistance provided to the Beneficiary during the Beneficiary's lifetime. The Trustee shall then satisfy such claim from the Trust up to the total value of all medical assistance paid on behalf of the Beneficiary subject to the terms of Section 2.2.1 prior to making any other distribution, in accordance with federal and state law.

3.3.  NOTIFICATION OF SOCIAL SERVICES DISTRICT CONCERNING TRANSFERS FROM TRUST FOR LESS THAN FAIR-MARKET VALUE--The Trustee shall notify the New Jersey Division of Medical Assistance and Health Services, Office of Legal and Regulatory Affairs, PO Box 712, Trenton, New Jersey 08625-0712, or its successor agency, in advance of any transactions involving transfers from the Trust principal for less than fair-market value.

3.4.  NOTIFICATION TO SOCIAL SERVICES DISTRICT CONCERNING TRANSACTIONS THAT DEPLETE PRINCIPAL--The Trustee shall notify the New Jersey Division of Medical Assistance and Health Services, Office of Legal and Regulatory Affairs, PO Box 712, Trenton, New Jersey 08625-0712, or its successor agency forty five (45) days in advance of any expenditure in excess of Five Thousand Dollars ($5,000.00) or of any transactions that substantially deplete the principal, in accordance with federal and state law.

4

3.5.     NOTIFICATION OF PROOF OF BONDING--The Trustee shall notify New Jersey Division of Medical Assistance and Health Services, Office of Legal and Regulatory Affairs, PO Box 712, Trenton, New Jersey 08625-0712, or its successor agency, with proof of bonding, unless that requirement has been waived by a court of competent jurisdiction.

## SECTION 4.  **FIDUCIARY PROVISIONS**

4.1.     If there is a change in the Trustee, prior notice shall be given to the New Jersey Division of Medical Assistance and Health Services, Office of Legal and Regulatory Affairs, PO Box 712, Trenton, New Jersey 08625-0712, or its successor agency, and to the Beneficiary and/or legal guardian of the Beneficiary.

No fiduciary need examine the accounts, records, and acts of any previous fiduciary or any allocation of the Trust Estate nor be responsible for any act or omission to act on the part of any previous fiduciary.

4.2.     RESIGNATION OF TRUSTEES

4.2.1. Right of Trustee to Resign--A Trustee and any Successor Trustee shall have the right to resign, by duly acknowledged written instrument delivered to the New Jersey Division of Medical Assistance and Health Services, Office of Legal and Regulatory Affairs, PO Box 712, Trenton, New Jersey 08625-0712, or its successor agency, and to the adult income beneficiaries and the adults who would be entitled to share in the principal of the Trust if it were then to terminate.

4.2.2. Power of Successor Trustees--Any Successor Trustee shall have the rights, powers, privileges, discretions, and duties conferred on or vested in the Trustees by the provisions of this Agreement.

4.3.     COMPENSATION

4.3.1. Compensation of Trustee— S.O.S. Eldercare Consultants, L.L.C., shall be entitled to compensation as set forth in its regularly published schedule of fees. If S.O.S. Eldercare Consultants, L.L.C., ceases to serve as Trsutee, then all individual (non-professional) Trustees shall be entitled to compensation as provided by N.J.S.A. 3B:18-1 *et. seq.*, as amended from time to time. Any successor corporate Trustee or financial institution serving as Trustee shall be entitled to compensation at the rate set forth in its regularly published schedule of fees. All Trustees shall be entitled to reimbursement for all reasonable expenses paid on behalf of the Trust.

4.4.     POWERS OF TRUSTEES

4.4.1. General Powers--The Trustee shall have all powers, authorities, and discretions granted under the law pursuant to N.J.S.A. 3B:14-23, and under any rule of court, so as to confer the broadest possible powers available.  In addition, the Trustee is expressly authorized and empowered, in the Trustee's sole and absolute discretion, to exercise the powers set forth below.

4.4.1.1. Non-Income-Producing Property--Trustee may invest in non-income-producing assets and may invest in housing owned jointly or solely by the Trust.

4.4.1.2. Investments--The Trustee may invest and reinvest in such stocks, bonds,

or other property, real or personal, including the purchase or sale of private annuities, life estates, and remainder interests, options on securities, and uninsured money market funds, as the Trustee may consider advisable or proper, without application to or the approval of any court and without being restricted as to the character of any investment of Trust funds.

4.4.1.3.   Nominee Named--The Trustee may hold investments in the name of a nominee.

4.4.1.4.   Distribution in Cash or in Kind--The Trustee may make distribution of the assets of the Trust in money or in kind, or partly in money and partly in kind, and the judgment and any determination of the Trustee in connection therewith, including values assigned to various assets and decisions to make non-pro rata distributions in kind, shall be binding and conclusive on all persons interested therein.

4.4.1.5.   Retain Property--The Trustee may retain any property (whether or not income-producing) that may be transferred to the Trust until such time as the Trustee may deem it desirable to dispose thereof.  However, the Trustee may not distribute income-producing property to the Beneficiary.

4.4.1.6.   Borrow Money--The Trustee may borrow money, with the payment of no interest or such interest as is deemed appropriate by the Trustee, for any purpose connected with the protection, preservation, or improvement of the Trust, or the enhancement of the benefits to the beneficiaries hereof, and may create one or more mortgages on, or pledges of, any part or all of the property held by the Trustees, whenever the Trustee shall deem the same advisable.

4.4.1.7.   Compromise Claims--The Trustee may pay, compromise, or adjust any claims of the Trust against others or of others against the Trust as the Trustee shall deem advisable.

4.4.1.8.   Execute Instruments--The Trustee may execute, acknowledge, and deliver any and all instruments in writing that the Trustee may deem advisable to carry out any of the foregoing powers. No party to any such instrument in writing signed by the Trustee shall be bound to see to the application by the Trustee of any property paid or delivered pursuant to the terms of such instrument.

4.4.1.9.   Professional Care Manager--The Trustee may also provide the services of its Professional Care Manager at its customary rates for those services to assist in providing the required care for Beneficiary.  The purpose of the Care Manager would be to coordinate other agencies or professionals or home health aides or personal-care providers or homemakers or any other services that the Care Manager and the Trustee feels are in the best interests of Beneficiary.  The primary purpose of this Trust is to provide funds to be spent on behalf of the Beneficiary to the fullest extent possible.  The Trustee shall pay all costs in connection with the Care Manager.

4.4.2.   Limitations--Notwithstanding any of the powers conferred on Trustee, no individual acting as Trustee hereunder shall exercise or join in the exercise of discretionary powers over income, principal, or termination of any Trust (1) for his or her own benefit or (2) to discharge his or her legal obligation to support any Beneficiary, provided he or she has sufficient income and is financially capable of doing so.

4.4.3.   Delegation--From time to time, any Trustee may delegate to any Co-Trustees the exercise of any powers, discretionary or otherwise, and may revoke any such delegation.  Such delegation

and revocation shall be evidenced by a writing delivered to such Co-Trustees. While such delegation is in effect, any of the powers, discretionary or otherwise, so delegated may be exercised and action may be taken with the same force and effect as if the delegating Trustees had personally joined in the exercise of such power and the taking of such action. Anyone dealing with the Trustees shall be absolutely protected in relying on their written statements relative to the fact and extent of such delegation.

      4.4.4. <u>Release of Powers</u>--Any Trustee may release in whole or in part, temporarily or irrevocably, any power, authority, or discretion conferred by this Trust Agreement, by a writing delivered to the Co-Trustees(s) and to each Beneficiary then eligible to receive income distributions from any Trust. Such renunciation or release shall not affect the grant of power, authority, or discretion to the Co-Trustees then acting.

      4.4.5. <u>Residence</u>--The Trustee may acquire, hold, and maintain any residence (whether held as real property, condominium, or cooperative apartment) for investment or for the use and benefit of the Beneficiary of this Trust, as the Trustee, in the exercise of sole and absolute discretion, shall determine. If the Trustee, in the exercise of sole and absolute discretion, shall determine that it would be in the best interests of the Beneficiary to maintain a residence for the use of the Beneficiary but that the residence owned by the Trustee should not be used for such purposes, the Trustee shall be authorized to sell said residence and to apply the net proceeds of sale to the purchase of such other residence or residences or to make such other arrangements as the Trustee, in the exercise of sole and absolute discretion, shall deem suitable for the purposes. Any proceeds of sale not needed for reinvestment in a residence as provided above are to be added to the principal of the Trust and thereafter held, administered, and disposed of as a part thereof--to pay all carrying charges of such residence, including but not limited to any taxes, assessments, and maintenance thereon; all expenses of the repair and operation thereof, including the employment of domestic servants and other expenses incident to the maintenance of a household for the benefit of the Beneficiary of the Trust; and such amounts as the Trustee, in the exercise of sole and absolute discretion, shall determine to be necessary to maintain the current life style of the Beneficiary, including, but not limited to, provision for the personal care and comfort of the Beneficiary in any manner whatsoever.

      Notwithstanding anything contrary to the above, if the Trust acquires a residence for the benefit of the Beneficiary and other family members also live in the residence, the Trustee shall require and collect a pro rata distribution for the expenses of uses incurred, and shall return such contribution to the Trust. Such collections shall be reflected in any accounting required of this Trust. In addition, unless the Trust is given an equity interest in any improvements to the real property, the Trust shall not pay for upkeep, property taxes or other expenses associated with the property or any additions to the existing property.

      4.4.6. <u>Elections</u>--The Trustee may make such elections under the tax laws as the Trustee, in the exercise of sole and absolute discretion, may determine to be appropriate, regardless of the effect thereof on any interests in any Trust created under this Agreement, and to determine whether or not any adjustment of such interests shall be made by reason of any such election.

      4.4.7. <u>Prudent Investor Act</u>--Notwithstanding anything to the contrary above, the Trustee shall fully comply with all laws of the State of New Jersey including the Prudent Investor Act, <u>N.J.S.A.</u> 3B:20-11.1 <i>et. seq.</i> and cannot take any actions not authorized by or without regard to State law.

      4.5. <u>BOND</u>--The original Trustee shall not be required to give bond or furnish sureties.

## SECTION 5.   <u>TAX AND ADMINISTRATIVE PROVISIONS</u>

5.1.    <u>INCOME TAX</u>

5.1.1.   <u>Payment</u>--The Trustee hereunder shall pay any income tax liability of the Beneficiary that results from income received by the Trust but properly reported on the income tax return of the Beneficiary.  The funds used to pay any such income tax liability shall be paid directly to the appropriate tax authority and shall not be available to the Beneficiary. The Beneficiary shall not have any right to or interest in any such funds paid by the Trustee.  Any such funds are not a resource of the Beneficiary and, for purposes of Medicaid qualification, should not be treated as a distribution of income. This shall in no way imply or otherwise suggest that the underlying assets generating the income is reportable to the Beneficiary as a resource or asset of the Beneficiary.

5.1.2.   <u>Refund</u>--In the event of a tax refund, any amount refunded shall be paid directly to the Trustee to the extent such refund is attributable to amounts previously paid by the Trustee.  For purposes of determining whether an amount is attributable to such prior payments, any refund (including interest thereon) shall be attributed to amounts previously paid by the Trustee to the extent that the Trustee made any tax payment for the relevant tax year that has not been previously refunded.  For purposes of determining whether an amount previously paid has been previously refunded, any interest included as part of a refund shall not be used to offset a previous payment by the Trustee.

5.1.3.   <u>Power of Attorney</u>--The Beneficiary or her guardian shall execute any letters, powers of attorney, or other documents required or requested by the taxing authority in order to allow payment of any refund to the Trustee.  In the event that any tax refund attributable in whole or part to a prior payment by the Trustee are paid directly to the Beneficiary or her guardian or other representative, the recipient of such refund or part thereof shall have no interest in or right to such refund or part thereof and shall hold the amount that is attributable to a prior payment by the Trustee as an agent of and for the Trustee and shall immediately turn over such amount to the Trustee.

5.1.4.   <u>Death-Tax Clause</u>--All estate, inheritance, and other death taxes, including any interest and penalties with respect to those taxes not caused by negligent delay, payable to any federal, state, or foreign taxing authority, imposed with respect to all property comprising my gross estate, whether or not such property passes under this Trust, shall be paid out of the principal of the residuary Trust estate.

5.2.    <u>PROTECTIVE PROVISION</u>--All principal and income, until actual distribution to the Beneficiary, shall be free of debts, contracts, alienations, and anticipations of any beneficiary, and the same shall not be liable to any levy, attachment, execution, or sequestration while in the possession of the Trustee.

Notwithstanding anything to the contrary herein, this provision is not intended to limit the State's right to reimbursement or recoup incorrectly paid benefits.

5.3.    <u>DISABILITY PROVISION</u>--Unless otherwise provided for herein, any income or principal payable to any beneficiary named in Section 2.2. who, in the opinion of the Trustee, is mentally or physically disabled, shall be held in a separate Trust by the Trustee during such disability, unless the Trust share is sooner terminated as otherwise provided herein.  Income may be accumulated and income and principal may be expended for the health, maintenance, support, and education of a Beneficiary as the Trustee, in the Trustee's sole discretion, may determine.  The Trustee may apply the same directly,

without the intervention of a guardian, or pay the same to any person having the care or control of said beneficiary or with whom a Beneficiary resides, without duty on the part of the Trustee to supervise or inquire into the application of such funds. The balance of such income and principal shall be paid to the Beneficiary when the disability ceases or to the Beneficiary's estate in the event of death prior thereto.

5.4.   ACCOUNTINGS--In addition, the Trustee shall render an annual account of the administration of the Trust to the then-living adult income beneficiaries and adult remainderman as well as to the New Jersey Division of Medical Assistance and Health Services, Bureau of applicable eligibility determination agency as directed by the New Jersey Division of Medical Assistance and Health Services, Office of Legal and Regulatory Affairs, or is successor agency. The aforementioned adult beneficiaries or adult remainderman, as the case may be, along with the applicable eligibility determination agency served with the annual accounting shall be conclusively presumed to have approved each such account unless he, she, or they file written exceptions thereto with the Trustee within thirty (30) days after the receipt of each account. The records of the Trust shall be opened at all reasonable times to the inspection of the beneficiaries of the Trust and their appointed representatives.

5.5.   GOVERNMENT-BENEFITS ADVISERS--The Trustee shall have the power to retain legal and professional assistance in administering this Trust and fulfilling its purposes. In particular, in making a determination whether to distribute income or principal to or for a beneficiary under the provisions of this Trust, Trustee may engage a professional adviser knowledgeable on the subject of the availability of funds or benefits from government or other sources on account of a beneficiary's mental or physical disability or handicap, to advise Trustee concerning the availability of such funds or benefits. Trustee shall be entitled to rely on the advice and information obtained from such adviser and shall not be liable for any act or omission on the part of the Trustee attributable thereto.

5.6   PROFESSIONAL LEGAL & FINANCIAL ADVISORS--The Trustee shall have the power to retain legal, accounting and financial assistance in the administering of this Trust, including, but not limited to lawyers, accountants, financial advisors and stock brokers. The reasonable costs and expenses of administering the Trust, including the retention and payment for the above services shall be paid first out of the Trust's income and then out of principal.

5.7.   IRREVOCABILITY

5.7.1.   No Retained Powers--The Grantor, Trustee and Beneficiary shall have no right or power, whether alone or in conjunction with others, in whatever capacity (1) to alter, amend, revoke, or terminate this Trust or any of the terms of this Agreement, in whole or in part; (2) to designate the persons who shall possess or enjoy the Trust property and the income therefrom except as otherwise provided in Section 2.2; or (3) to exercise any of the incidents of ownership in any property transferred to the Trust.

5.7.2.   Jurisdiction--Notwithstanding the provisions of Section 5.7.1., an application to alter or amend this Trust may be brought by a Trustee or any Beneficiary (or such Beneficiary's legal representative) who is then presently eligible to receive distributions from the Trust, before the Superior Court of New Jersey, Law Division, Union County. No contingent Beneficiary not presently vested in the Trust Estate shall have standing to Petition the court to alter or amend this Trust. To the extent possible, amendments should conform with any regulations that are approved by any governing body or agency relating to 42 USC § 1396(p) or related statutes, including state statutes that are consistent with provisions and purposes of the Omnibus Budget Reconciliation Act of 1993 (OBRA-93) and the amendments to such Act. The Trustee shall be required to give notice of any petition to alter or amend this Trust to the New

Jersey Division of Medical Assistance and Health Services, Office of Legal and Regulatory Affairs, PO Box 712, Trenton, New Jersey 08625-0712, or its successor agency.

5.8.   <u>SITUS</u>

5.8.1.  <u>Original Situs</u>--Questions pertaining to the validity, construction, and administration of this Trust shall be determined in accordance with the law of the State of New Jersey.

5.8.2.  <u>Changing the Trust Situs</u>--The situs of any Trust established herein may be changed by the unanimous consent of the Trustee upon notice to the New Jersey Division of Medical Assistance and Health Services, Office of Legal and Regulatory Affairs, PO Box 712, Trenton, New Jersey 08625-0712, or its successor agency.

5.9.   <u>ADDITIONAL PROPERTY</u>--Any additional property added to this Trust shall be held, administered, and distributed in accordance with all the terms and provisions of this instrument. Subsequent additions made to the Trust corpus shall be reported to the New Jersey Division of Medical Assistance and Health Services, Office of Legal and Regulatory Affairs, PO Box 712, Trenton, New Jersey 08625-0712, or its successor agency.

Notwithstanding anything contrary to the above, subsequent additions to the Trust (other than interest on the corpus) shall cease when the Beneficiary reaches age 65.

In addition, if subsequent additions are made to the Trust corpus with funds not belonging to the Beneficiary, it shall be understood that those funds are a gift to the Beneficiary and cannot be reclaimed by the donor.

5.10.   <u>DEFINITIONS</u>

5.10.1. <u>Per Stirpes Distributions</u>--Unless otherwise specifically provided, all distributions are to be made to a person's descendants, *per stirpes*:

The distributable assets are to be divided into as many shares as there are then-living children of such deceased person and deceased children of such deceased person who left then-living descendants.

Each then-living child shall receive one (1) share, and the share of each deceased child shall be divided among such child's then-living descendants in the same manner.

5.10.2. <u>Descendants</u>--The "descendants of a person" means all of that person's lineal descendants of all generations.   The relationship of parent and child at each generation shall be determined by the definition of parent and child contained under New Jersey law as of the date of my death.

A descendant in gestation who is later born alive shall be considered a descendant in being throughout the period of gestation.

An adopted person, and all persons who are the descendants by blood or by legal adoption of an adopted person, shall be considered descendants of the adopting parents as well as descendants of the adopting parent's ancestors.

5.10.3. <u>Disability</u>--A beneficiary under this Trust is disabled or under a disability when he

10

or she is under the age of eighteen (18) years and not emancipated or if, in the judgment of my fiduciary, the beneficiary is unable to manage his or her property and affairs for reasons such as mental illness, mental deficiency, physical illness or disability, chronic use of drugs, chronic intoxication, confinement, detention by a foreign power, or disappearance.  If any court of competent jurisdiction has declared a beneficiary to be disabled or under a disability, my fiduciary shall be bound by that determination as long as that determination is in effect.

5.10.4. <u>Trustees</u>--Any reference to the "Trustees" shall include the singular or plural and the masculine, feminine, or neuter and is intended to refer to such person or persons serving as the Trustees, including the original Trustees or any successor Trustees, whether such Trustees shall be an individual or a corporation.

5.10.5. <u>Other Definitions</u>--Except as otherwise provided in this Trust, terms shall be as defined in <u>N.J.S.A</u>. 3B:1-1 and 3B:1-2 as amended after the date of this Trust.

**IN WITNESS WHEREOF**, **Demelin Castillo Merida**, as Grantor, and **S.O.S. Eldercare Consultants, L.L.C.**, as Trustee, have signed this Trust Agreement on the day and year first above written.

ACCEPTED:                                                     ACCEPTED:

                                                                      **S.O.S. Eldercare Consultants, L.L.C., Trustee**

*[signature]*                                                     *Nelly Koetzner*

**Demelin Castillo Merida**, Grantor                  By: *Nelly Koetzner, Mgr.*

STATE OF NEW JERSEY               :                   *Manager*
                                                   : ss.
COUNTY  OF                                 :

**I CERTIFY** that on this ____ of September, 2015

**BEFORE ME**, the undersigned authority, personally appeared **Demelin Castillo Merida**  personally known to me or proved to me, on the basis of satisfactory evidence, to be the person whose name is subscribed to the within instrument, and acknowledged that she executed the same.

**WITNESS** my hand and official seal.

                                                                      *New Jersey*

STATE OF NEW JERSEY               :
                                                   : ss.                     *Morris*
COUNTY  OF                                 :

**I CERTIFY** that on this 17 day of July, 2015

                                                                      *Nelly Koetzner And*

**BEFORE ME**, the undersigned authority, personally appeared *Demelin Castillo Merida* personally known to me or proved to me, on the basis of satisfactory evidence, to be a duly authorized representative of **S.O.S. Eldercare Consultants, L.L.C.**, the entity whose name is subscribed to the within instrument, and acknowledged that he or she executed the same.

**WITNESS** my hand and official seal.

                                                                      *[signature]*

Cheryl L. Jones
Notary Public of New Jersey
Commission ID #2410265
Commission Expires 7/7/2016

## SCHEDULE A

$168,633.77   Representing net settlement proceeds received in connection with the lawsuit captioned *NAHOMI PEREZ CASTILLO by her Guardian Ad Litem DEMELIN CASTILLO MERIDA, and DEMELIN CASTILLO MERIDA and HECTOR PEREZ, Individually, v. UNITED STATES OF AMERICA,* United States District Court for the District of New Jersey, Docket No. 2:10-cv-00992-KSH-PS before the Honorable Kathryn S. Hayden, U.S.D.J.

PAUL J. FISHMAN
United States Attorney
KRISTIN L. VASSALLO
Assistant United States Attorney
970 Broad Street, Suite 700
Newark, NJ 07102
Tel. (973) 645-2835
Fax. (973) 297-2010
Email: kristin.vassallo@usdoj.gov


UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| N.P.C., by her Guardian Ad Litem DEMELIN CASTILLO MERIDA, and, DEMELIN CASTILLO MERIDA and HECTOR PEREZ, Individually,<br><br>*Plaintiffs,*<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>*Defendant.* | HON. KATHARINE S. HAYDEN<br><br>*Civil Action No.* 10-CV-992 (KSH) (CLW)<br><br>STIPULATION OF COMPROMISE, SETTLEMENT, AND RELEASE OF FEDERAL TORT CLAIMS ACT CLAIMS PURSUANT TO 28 U.S.C. § 2677 |

      It is hereby stipulated and agreed by and between the plaintiffs, N.P.C., a minor, by her parents and natural guardians, Demelin Castillo Merida and Hector Perez, and Demelin Castillo Perez and Hector Perez, in their own right (collectively referred to herein as "Plaintiffs"), and the United States of America (collectively, the United States and Plaintiffs are referred to herein as the "Parties"), by and through their respective undersigned attorneys, as follows:

      1.    The Parties do hereby agree to settle and compromise each and every claim of any kind, whether known or unknown, arising directly or indirectly from the acts or omissions that gave rise to the above-captioned action under the terms and conditions set forth in this Stipulation of Compromise, Settlement, and Release of Federal Tort Claims Act Claims Pursuant to 28 U.S.C. § 2677 (the "Settlement Agreement").

2.     The United States agrees to pay the sum of three hundred and fifty thousand dollars ($350,000.00) (the "Settlement Amount"), which sum shall be in full settlement and satisfaction of any and all claims, demands, rights, and causes of action of whatsoever kind and nature, arising from, and by reason of any and all known and unknown, foreseen and unforeseen bodily and personal injuries, damage to property and the consequences thereof, resulting, and to result, from the subject matter of this settlement, including any claims for wrongful death, for which Plaintiffs or their guardians, heirs, executors, administrators, or assigns, and each of them, now have or may hereafter acquire against the United States, its agents, servants, and employees.

3.     Plaintiffs and their guardians, heirs, executors, administrators, or assigns hereby agree to accept the Settlement Amount in full settlement and satisfaction of any and all claims, demands, rights, and causes of action of whatsoever kind and nature, including claims for wrongful death, arising from, and by reason of any and all known and unknown, foreseen and unforeseen bodily and personal injuries, damage to property and the consequences thereof, which they may have or hereafter acquire against the United States, its agents, servants, and employees, on account of the same subject matter that gave rise to the above-captioned action, including any future claim or lawsuit of any kind or type whatsoever, whether known or unknown, and whether for compensatory or exemplary damages.   Plaintiffs and their guardians, heirs, executors, administrators, or assigns further agree to reimburse, indemnify, and hold harmless the United States, its agents, servants, and employees, from and against any and all such causes of action, claims, liens, rights, or subrogated or contribution interests incident to or resulting from further litigation or the prosecution of   claims by Plaintiffs or their guardians, heirs, executors, administrators, or assigns against any third party or against the United States, including claims for wrongful death.   With respect to indemnification, the previous sentence is intended to cover

any instances in which a third-party asserts a claim for an unpaid medical or subrogation lien by Plaintiffs or their guardians, heirs, executors, administrators, or assigns against any third party or against the United States, including claims for wrongful death.

4.      This Settlement Agreement is not, is in no way intended to be, and should not be construed as, an admission of liability or fault on the part of the United States, its agents, servants, or employees, and it is specifically denied that they are liable to the Plaintiffs.  This Settlement Agreement is entered into by all Parties for the purpose of compromising disputed claims under the Federal Tort Claims Act and avoiding the expenses and risks of further litigation.

5.      Plaintiffs' attorneys agree to file a certification containing information required in New Jersey Court Rule 4:26-2(b)(1) so that Demelin Castillo Merida may act as the guardian ad litem for N.P.C.  Demelin Castillo Merida hereby waives any and all claims to be paid a fee for services she has or will render as guardian ad litem.

6.      The Plaintiffs must obtain Court approval of the settlement at their expense.  Such Court approval must be obtained prior to the United States seeking the settlement amount from the Health Resources and Services Administration, Department of Health and Human Services. In the event Plaintiffs fail to obtain such Court approval, this entire Settlement Agreement is null and void.  Plaintiffs must identify in their motion for an order approving the settlement the amount of each lien or claim, whether formal or informal, for payment or reimbursement, arising from the subject matter of this action, currently known to them based upon a diligent search of their files and their attorneys' files.  The court order approving the settlement must provide that the aggregate amount of such liens and claims for payment or reimbursement must be segregated in the attorney's client trust account, that such segregated amount must be used to pay or resolve

all such liens or claims for payment or reimbursement, and that no portion of such segregated amount may be paid to the Plaintiffs until all such liens and claims for payment and reimbursement have been paid or resolved.

7.     Within three business days of the Court's execution of an order approving this settlement, the Plaintiffs shall supply to defense counsel a Stipulation of Dismissal in the form attached hereto.

8.     The payment of the Settlement Amount is subject to the availability of sufficient funds in the special account for community health center settlements and judgments to pay the entire Settlement Amount at one time.  See 42 U.S.C. § 233(k).

9.     It is also agreed, by and among the Parties, that the respective Parties will each bear their own costs, fees, and expenses and that any attorneys' fees owed by the Plaintiffs will be paid out of the settlement amount and not in addition thereto.

10.    It is also understood by and among the Parties that pursuant to 28 U.S.C. § 2678, attorneys' fees for services rendered in connection with this action shall not exceed 25 per centum of the amount of the Settlement Amount.

11.    Payment of the settlement amount will be made by check drawn on the United States for three hundred fifty thousand dollars ($350,000.00) and made payable to "[N.P.C's full name], Demelin Castillo Merida, and Hector Perez, and their attorney Michael Zerres."  The check will be mailed to Plaintiffs' attorney at the following address: Blume Donnelly Fried Forte Zerres & Molinari, One Main Street, Chatham, NJ 07928.  Plaintiffs' attorney agrees to distribute the settlement proceeds in accordance with the orders issued by the Court, and to obtain a dismissal of the above-captioned action with prejudice, with each party bearing its own fees, costs, and expenses.

12.     The persons signing this Settlement Agreement warrant and represent that they possess full authority to bind the persons on whose behalf they are signing to the terms of the settlement.

13.     The Parties agree that this Settlement Agreement, including all the terms and conditions of this compromise settlement and any additional agreements relating thereto, may be made public in their entirety, and the Plaintiffs expressly consent to such release and disclosure pursuant to 5 U.S.C. § 552a(b).

14.     It is contemplated that this Settlement Agreement may be executed in several counterparts, with a separate signature page for each party. All such counterparts and signature pages, together, shall be deemed to be one document.

Executed this 18 day of February, 2016

BLUME DONNELLY FRIED FORTE
ZERRES & MOLINARI, P.C.

By:     _____
MICHAEL B. ZERRES, ESQ.
Attorney for Plaintiffs

Executed this 19 day of February, 2016

_____
N.P.C by DEMELIN CASTILLO MERIDA

Executed this 19 day of February, 2016

_____
HECTOR PEREZ

Executed this ___ day of _____, 2016

_____
DEMELIN CASTILLO MERIDA

Executed this _18_ day of _____, 2016

PAUL J. FISHMAN
United States Attorney for the
District of New Jersey

By: _____
KRISTIN L. VASSALLO
Assistant United States Attorney
Attorney for the United States

.

PAUL J. FISHMAN
United States Attorney
KRISTIN L. VASSALLO
Assistant United States Attorney
970 Broad Street, Suite 700
Newark, NJ 07102
Tel. (973) 645-2835
Fax. (973) 297-2010
Email: kristin.vassallo@usdoj.gov


UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| N.P.C., by her Guardian Ad Litem DEMELIN CASTILLO MERIDA, and, DEMELIN CASTILLO MERIDA and HECTOR PEREZ, Individually, | HON. KATHARINE S. HAYDEN |
| | *Civil Action No.* 10-CV-992 (KSH) (CLW) |
| *Plaintiffs,* | STIPULATION OF DISMISSAL |
| v. | |
| UNITED STATES OF AMERICA, | |
| *Defendant.* | |

WHEREAS, plaintiffs, N.P.C., a minor, by her parents and natural guardians, Demelin

Castillo Merida and Hector Perez, and Demelin Castillo Perez and Hector Perez, in their own right

(collectively referred to herein as "Plaintiffs") and defendant the United States of America (the

"United States") have amicably resolved all of Plaintiffs' claims against the United States, its

agents, servants, and employees in the above-captioned action;

IT IS HEREBY STIPULATED AND AGREED by and between Plaintiffs and the United

States, by their respective counsel, that all of Plaintiffs' claims against the United States, its

agents, servants, and employees in the above-captioned action are dismissed with prejudice and without costs, attorneys' fees, expenses, or disbursements to any party.

Dated: Chatham, New Jersey
      February __, 2016

                                          BLUME DONNELLY FRIED FORTE
                                          ZERRES & MOLINARI, P.C.

                            By: _____
                                          MICHAEL B. ZERRES, ESQ.
                                          Attorney for Plaintiffs

Dated: Newark, New Jersey
      February __ 2016

                                          PAUL J. FISHMAN
                                          United States Attorney for the
                                          District of New Jersey
                                          Attorney for United States of America

                            By: _____
                                          KRISTIN L. VASSALLO
                                          Assistant United States Attorney